1  John P. Kristensen (SBN 224132)
2  David L. Weisberg (SBN 211675)
   **KRISTENSEN WEISBERG, LLP**
3  12540 Beatrice Street, Suite 200
   Los Angeles, California 90066
4  Telephone: (310) 507-7924
5  Fax: (310) 507-7906
   *john@kristensenlaw.com*
6  *david@kristensenlaw.com*
7
   Jarrett L. Ellzey (*Pro Hac Vice* pending*)*
8  W. Craft Hughes (*Pro Hac Vice* pending*)*
9  **HUGHES ELLZEY, LLP**
   2700 Post Oak Boulevard, Suite 1120
10 Houston, Texas 77056
11 Telephone: (713) 554-2377
   Fax: (888) 995-3335
12 *jarrett@hughesellzey.com*
13 *craft@hughesellzey.com*
14 **Attorneys for Plaintiff and all others**
15 **similarly situated**

16         THE UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF CALIFORNIA

17 ERIKA CARRANZA, an individual,      ) Case No.:  **'19 CV0164 GPC WVG**
18 on behalf of herself and all others  )
   similarly situated,                  )
19                                      ) **CLASS ACTION**
                                        )
20         Plaintiffs,                  ) **PLAINTIFF'S COMPLAINT FOR**
                                        ) **DAMAGES AND INJUNCTIVE**
21         vs.                          ) **RELIEF**
                                        )
22                                      ) (1)  Violations of the Telephone
   CREDITREPAIR.COM, INC., a            )      Consumer Protection Act, 47
23 Florida Limited Liability Company;   )      U.S.C. § 227, *et seq.* (Do Not
   and DOE INDIVIDUALS, inclusive,      )      Call); and
24 and each of them,                    )
                                        ) (2)  Violations of the Telephone
25                                      )      Consumer Protection Act, 47
           Defendants.                  )      C.F.R. § 64.1200(d) (Internal Do
26                                      )      Not Call).
                                        )
27                                      ) **DEMAND FOR JURY TRIAL**
28

Plaintiff Erika Carranza ("Carranza" or "Plaintiff"), on behalf of herself and all others similar situated, alleges the follow upon information and belief based upon personal knowledge:

## NATURE OF THE CASE

1.     Plaintiff, on behalf of herself and others similarly situated, is seeking damages and any other available legal or equitable remedies resulting from the illegal actions of defendant CREDITREPAIR.COM, INC. and INDIVIDUAL DOES (collectively "Defendants") in contacting Plaintiff, as well as knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *set* seq. ("TCPA").

2.     Defendant CREDITREPAIR.COM, INC. sells solutions to improve personal credit scores. In an effort to solicit potential customers, CreditRepair.com, Inc. recruited, or employed call centers, to place telephone calls, *en masse*, to consumers across the country. On information and belief, Defendant and or its agents purchase phone number databases of consumers' contact information and creates an electronic database from which Defendant makes automated calls.

3.     Defendants conducted (and continue to conduct) wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the TCPA.

4.     Defendants continued the calls, even after Plaintiff explicitly told them to stop and revoked any purported assent to receive the illegal calls.

5.     By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone

calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

6.      Plaintiff brings this class action against Defendants to secure redress because Defendants willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' telephones through the use of an auto-dialer and/or artificial or pre-recorded voice message.

7.      Defendants conducted (and continue to conduct) wide scale telemarketing campaigns and repeatedly made/make unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), including to Plaintiff and other class members, whose phone numbers were registered with the Do Not Call Registry, at least twice in a 12 month period.

8.      By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of the putative Classes of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

9.      Congress enacted the TCPA to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all illegal telephone calling activities to her cellular telephone, and other individuals cellular phones and an award of statutory damages under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees (including under Cal. *Code Civ. Proc.* § 1021.5), and treble damages (for knowing and/or willful violations). Plaintiff

1  also seeks an award of court costs and reasonable attorney's fees.

2                                **PARTIES**

3     10.    Plaintiff ERIKA CARRANZA ("Plaintiff" or "Carranza") is a

4  citizen of the State of California who resides in San Diego County, California.

5     11.    Defendant CREDIT REPAIR.COM, INC. ("Defendant" or "Credit

6  Repair") is organized under the laws of the State of Florida. Defendant maintains

7  its principal place of business in Salt Lake City, Utah. Defendant may be served

8  with process by serving its registered agent, CT Corporation System, 1200 South

9  Pine Island Road, Plantation, FL 33324.

10    12.    The true names and capacities of the Defendants sued herein as

11 DOE INDIVIDUALS, inclusive, are currently unknown to Plaintiff, who

12 therefore sues such Defendants by fictitious names.  Each of the Defendants

13 designated herein as a DOE is legally responsible for the unlawful acts alleged

14 herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the

15 true names and capacities of the DOE Defendants when such identities become

16 known.

17    13.    Plaintiff does not yet know the identity of Defendants'

18 employees/agents, identified as DOE INDIVIDUALS that had direct, personal

19 participation in or personally authorized the conduct found to have violated the

20 statute, and were not merely tangentially involved. They are named tentatively as

21 numerous District Courts have found that individual officers/principals of

22 corporate entities may be personally liable (jointly and severally) under the

23 TCPA if they had direct, personal participation in or personally authorized the

24 conduct found to have violated the statute, and were not merely tangentially

25 involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex.

26 2001); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, No. 3:12 CV

27 2257, 2014 WL 1333472, at *3 (N.D. Ohio March 28, 2014); *Maryland v.

28 Universal Elections*, 787 F.Supp.2d 408, 415–416 (D.Md. 2011); *Baltimore-*

*Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, No. CIV.A. 01-0004360, 2003 WL 21384825, at *6 (D.C. Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *16–17 (N.D. Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants.

14.  Plaintiff is informed and believes and thereon alleges that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was the owner, agent, servant, joint venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent each of the other Defendants.  Plaintiff is informed and believes and thereon alleges that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

15.  At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

## JURISDICTION & VENUE

16.  Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because the Plaintiff, a resident of California, seeks relief on behalf of a Class, which will result in at least one class member belonging to a different state than that of the Defendant, which is based in California.

17.  Plaintiff also seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class in the thousands, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Therefore, both diversity jurisdiction and the damages threshold under the Class

Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

19.    The Court has personal jurisdiction over Defendant because it conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Defendants were targeting individuals in this district. The calls were made with the intent to sell credit repair products and services.

21.    Defendant is subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through their marketing efforts and services that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice. The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## TELEPHONE CONSUMER PROTECTION ACT

23.    Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded

voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system (hereinafter "ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent. If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[1] The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

24.     In 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2012 WL 7062748 (N.D. Ill. Dec. 31, 2012).

25.     The TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

---

[1]     Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

26.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

27.     As of October 16, 2013, unless the recipient has given prior express written consent, the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

28. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier*, 2012 WL 7062748.

29. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## A.   DO NOT CALL VIOLATIONS OF THE TCPA

30. There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

31. <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

32. <u>Calls to Phones on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who

has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

33. <u>Including Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

34. <u>The Affirmative Defense of Prior Express Consent</u>. The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). "Prior express consent is an affirmative defense for which the defendant bears the burden of proof." *See Grant v. Capital Management Services, L.P.*, No. 11-56200, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); *see also Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22,

2013).

## FACTUAL ALLEGATIONS

35.     Defendant is a company that sells solutions to improve personal credit scores. During spring 2015 (starting in March 2015), in an effort to solicit potential customers, Defendant began making telephone calls, *en masse*, to consumers across the country. On information and belief Defendant and or its agents purchase "leads" containing consumer's contact information and creates an electronic database from which Defendant makes automated calls.

36.     Defendant knowingly made these telemarketing calls without the prior express written consent of the call recipients, and knowingly continue to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF ERIKA CARRANZA

37.     On or about March 16, 2009 Plaintiff Carranza registered her cellular phone number with the area code (619) and ending in 0058 with the National Do Not Call Registry.

38.     Plaintiff Carranza is the regular carrier and exclusive user of the telephone assigned the number ending in 0058.  The number is assigned to a cellular telephone service for which Plaintiff Carranza is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

39.     In the spring of 2015, Plaintiff Carranza began receiving calls on her cellular telephone from the number (718) 509-9927, claiming to be Defendant, CreditRepair.com

40.     Plaintiff Carranza never had a business relationship with Defendant. Yet, she received at least 9 calls from Defendant.

41.     Plaintiff Carranza never provided Defendant with prior consent to contact her on her phone via a text message or telephone call.

42.     Nonetheless, Defendant called Plaintiff Carranza dozens of times on her phone during a twelve-month period, often daily.

43.     Defendant Carranza specifically and bluntly told Defendant, "I've asked you many times to not call. Can I speak to a manager? Please put me on your do not call list." Yet, the calls continued.

44.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

45.     Defendant's unsolicited telemarketing calls caused Plaintiff Carranza extreme aggravation and occupied her telephone line.

46.     Plaintiff Carranza has reason to believe Defendant called thousands of telephone customers listed on the Do Not Call Registry to market their products and services.

47.     Plaintiff's overriding interest is ensuring Defendant cease all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

48.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and a class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls voice and text to individuals whose numbers are registered on the Do Not Call Registry.

49.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages to the class numbers, together with costs and reasonable attorneys' fees.

## STANDING

50.     Plaintiff has standing to bring this suit on behalf of herself and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable

to the conduct of Defendants; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Robins v. Spokeo,* 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554 (Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

**A.    INJURY IN FACT**

51.    A Plaintiff's injury must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution. *Id.*

52.    For an injury to be concrete it must be a de facto injury, meaning it actually exists.  In the present case, Plaintiff took the affirmative step of enrolling herself on the National Do-Not-Call Registry for the purpose of preventing marketing calls to their telephones. Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).  All three of these injuries are present in this case. *See also Chen*, *supra*.

53.    Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

54.    For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo*, 136 S.Ct. at 1548. In the instant case, Defendants placed calls to Plaintiff's phone. It was Plaintiff's

personal privacy and peace that Defendants invaded by placing the calls to her phone. Furthermore, Plaintiff is the person who pays for the phone, and is the regular carrier and user of the phone. All of these injuries are particular to Plaintiff.

**B.** **TRACEABLE TO THE CONDUCT OF EACH SEPARATE DEFENDANT**

55. Plaintiff must allege at the pleading stage of the case facts to show that her injury is traceable to the conduct of Defendants. In this case, Plaintiff satisfies this requirement by alleging that Defendants, and/or agent of Defendants on behalf of Defendants, placed illegal calls to Plaintiff's phone.

**C.** **INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION**

56. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

57. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo*, and in the context of a TCPA claim, as explained by the Ninth Circuit in *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016), Plaintiff has standing to sue Defendant on the stated claims. Plaintiffs have standing to sue Defendants on the stated claims.

## CLASS ALLEGATIONS

58. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or other applicable law, on behalf of themselves and all

others similarly situated, as a member of a proposed class (hereafter "the DNC Class" and the "Internal DNC Class").

59.   The DNC Class is defined as follows:

All persons within the United States who: (1) received more than one telephone call made by or on behalf of Defendant(s) within a 12-month period, in the four years preceding the initial Complaint to trial; and (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

60.   The Internal DNC Class is defined as follows:

All persons in the United States to whom: (a) received more than one telephone call made by or on behalf of Defendant(s); (b) promoting Defendants' goods or services; (c) more than 30 days after requesting not to receive further calls; (d) in a 12-month period; (e) on their cellular telephone line or residential telephone line; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

61.   **Numerosity**: The proposed Classes are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiffs do not know the number of members in the Classes, but believes the Class members number in the thousands, if not more. Plaintiffs allege that the Class may be ascertained by the records maintained by Defendants.

62.   Plaintiffs and members of the Classes were harmed by the acts of Defendant(s) in at least the following ways: Defendants illegally contacted Plaintiffs and Class members via their telephones thereby causing Plaintiff and Class members, without their "prior express consent," to incur certain charges or reduced telephone time for which Plaintiffs and Class members had previously paid by having to retrieve or administer message(s) left by Defendant during

those illegal calls, and invading the privacy of said Plaintiffs and Class members.

63.  **Common Questions of Law and Fact Predominate**: There are only a few legal and factual issues to determine if there is liability under the TCPA and for each of those questions of law and fact, common issues to the Class predominate over any questions that may affect individual Class members, in that the claims of all Class members for each of the claims herein can be established with common proof. Common questions of fact and law include, but are not limited to, the following:

(a)  Whether, within the four years prior to the filing of this Complaint, Defendant(s) made any calls (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automated dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

(b)  Whether, within the four years prior to the filing of this Complaint, Defendant(s) made any calls (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automated dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

(c)  Whether Defendants systematically made telephone calls to consumers whose telephone numbers were registered with the National do Not Call Registry;

(d)  Whether Defendants failed to comply with the internal DNC mandates of 47 C.F.R. §§ 64.1200(d).

(e)  Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct;

(f)  Whether Plaintiff and the Class members were damaged thereby,

and the extent of the statutory damages for each such violation; and

(g)     Whether the Defendant(s) should be enjoined from engaging in such conduct in the future.

64.     **Typicality**:  Plaintiffs' claims are typical of the claims of members of the Classes, as Plaintiffs were subject to the same common course of conduct by Defendants as all Class members. The injuries to each member of the Class were caused directly by Defendant(s)' wrongful conduct as alleged herein.

65.     **Adequacy of Representation**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have financial resources to do so.

66.     **Superiority of Class Action**:  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Class members have little interest in individually controlling the prosecution of separate actions because the individual damage claims of each Class member are not substantial enough to warrant individual filings. In sum, for many, if not most, Class members, a class action is the only feasible mechanism that will allow them an opportunity for legal redress and justice. Plaintiff is unaware of any litigation concerning the present controversy already commenced by members of the Class. The conduct of this action as a class action in this forum, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

67.     Moreover, individualized litigation would also present the potential for varying, inconsistent, or incompatible standards of conduct for Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. The adjudication of

individual Class members' claims would also, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.

68.     Plaintiff and the members of the Classes have suffered and will continue to suffer harm as a result of Defendant(s)' unlawful and wrongful conduct. Defendant(s) have acted, or refused to act, in respects generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

## FIRST CAUSE OF ACTION

**DNC CLAIM IN VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.* (64 C.F.R. § 64.1200(C))**

**(By Plaintiff Against All Defendants)**

69.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

70.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

71.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)— provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c). Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or

causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

72.    47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

73.    As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of 47 C.F.R. § 64.1200(c), Plaintiff and members of the DNC Class are entitled to an award of $500 in statutory damages for each and every call initiated to them, after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B).

74.    Plaintiff and members of the National Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf

from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation to any residential telephone subscriber who has registered his or her telephone numbers with the National Do-Not-Call Registry in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## SECOND CAUSE OF ACTION

### INTERNAL DNC CLAIM IN VIOLATION OF
### THE TELEPHONE CONSUMER PROTECTION ACT,
### 47 U.S.C. § 227, *ET SEQ.* (64 C.F.R. § 64.1200(D))
### (By Plaintiff Against All Defendants)

75.    Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

76.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if

provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

77.     Defendants made more than one unsolicited telephone call to Plaintiff and members of the Internal DNC Class within a 12-month period . Plaintiff and members of the DNC Class never provided any form of consent to receive telephone calls from Defendants do not have a record of consent to place telemarketing calls to them and/or Plaintiffs and members of the DNC Class revoked consent.

78.     Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as

Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

79.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Internal DNC Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the DNC Class and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

80.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

81.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for relief and judgment as follows:

(a)     An order certifying the Classes as defined above, appointing Plaintiffs as the representative of the Classes, and appointing their counsel, KRISTENSEN WEISBERG, LLP & HUGHES ELLZEY, LLP as lead Class Counsel;

(b)     An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

(c)     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

(d)     An injunction requiring Defendants and Defendants' agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

(e)     Pre-judgment and post-judgment interest on monetary relief;

(f)     An award of reasonable attorneys' fees and court costs; and

(g)     All other and further relief as the Court deems necessary, just, and proper.

Dated:  January 24, 2019                    Respectfully submitted,

By:  */s/ John P. Kristensen*

John P. Kristensen (SBN 224132)
*john@kristensenlaw.com*
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  (310) 507-7924
Fax:  (310) 507-7906

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues that may be decided by jury.

Dated:  January 24, 2019                    Respectfully submitted,

By:  */s/ John P. Kristensen*
     _____

                              John P. Kristensen (SBN 224132)
                              *john@kristensenlaw.com*
                              **KRISTENSEN WEISBERG, LLP**
                              12540 Beatrice Street, Suite 200
                              Los Angeles, California 90066
                              Telephone:  (310) 507-7924
                              Fax:  (310) 507-7906